UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARLA KRAL, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 4:13-CV-1886-SPM |
| JAMES D. TEMPERATO, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants James D. Temperato and Adrian J. Temperato's motion to dismiss for lack of subject matter jurisdiction (Doc. 30), and Defendant JDT Enterprise, Inc.'s motion to dismiss for lack of subject matter jurisdiction (Doc. 45). For the reasons stated below, both motions will be denied.

### I. BACKGROUND

Plaintiff Marla Kral ("Plaintiff") is an individual with a disability related to complications from a broken neck. On March 14, 2010, Plaintiff went to the Dairy Queen restaurant in Hillsboro, Missouri, parked in a disabled parking spot, and went into the restaurant. As she was coming out of the restaurant, Plaintiff stepped off of the sidewalk onto an allegedly faulty curb ramp, tripped, fell, and sustained injuries.

In her Amended Complaint, Plaintiff brings three counts against the owners and/or operators of the Dairy Queen restaurant: Defendants James D. Temperato, Adrian J. Temperato,

and JDT Enterprises, Inc. (collectively, "Defendants"). In Count I, Plaintiff alleges that Defendants discriminated against her in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (the "ADA"), by failing to provide ADA-compliant parking facilities and curb ramps. Plaintiff seeks declaratory and injunctive relief and attorney fees. In Count II, Plaintiff asserts a common-law negligence claim and seeks damages. In Count III, Plaintiff seeks punitive damages.

In their motions to dismiss, Defendants assert that Plaintiff lacks standing to bring an ADA claim because her disability is unrelated to the alleged ADA violations at issue. Defendants also argue that if the Court dismisses the ADA claim, it should not exercise supplemental jurisdiction over the state law claims.

## II. DISCUSSION

### A. Legal Standard

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be either a "facial" challenge or a "factual" challenge. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Gaylor v. GS Brentwood*, No. 4:11-CV-506 CAS, 2011 WL 5079588, at *1 (E.D. Mo. Oct. 25, 2011). If the movant brings a facial challenge, "all of the factual allegations concerning jurisdiction are presumed to be true," and the motion should be granted "if the plaintiff fails to allege an element necessary for subject matter jurisdiction" *Titus*, 4 F.3d at 593. On the other hand, if the movant brings a factual challenge, "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Id*. Where the movant raises a factual attack, "'no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Osborn v. United States*, 918 F.2d 724,

730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2 884, 891 (3d Cir. 1977)); *see also Iowa League of Cities v. Envtl. Prot. Agency*, 711 F.3d 844, 870 (8th Cir. 2013) (noting that where the defendant brings a factual challenge to subject matter jurisdiction, the plaintiff "must establish standing without the benefit of any inferences in [her] favor") (quotation marks omitted). The party seeking to litigate in federal court "ha[s] the burden of establishing jurisdiction, including standing, by a preponderance of the evidence." *Iowa League of Cities*, 711 F.3d at 844 (quotation marks omitted).

Here, Defendants raise a factual challenge to the Court's subject matter jurisdiction, so the Court must consider the affidavits and deposition testimony in the record, weigh the evidence, and determine whether Plaintiff has shown by a preponderance of the evidence that jurisdiction exists.

### B. Plaintiff Has Standing to Bring Her ADA Claims

Title III of the ADA "proscribes discrimination in places of public accommodation against persons with disabilities." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (citing 42 U.S.C. § 12182(a)). Such discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "The ADA grants a private right of action for injunctive relief to, inter alia, 'any person who is being subjected to discrimination on the basis of disability.'" *Steger*, 228 F.3d at 892 (quoting 42 U.S.C. § 12188(a)(1)). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual . . . ." 42 U.S.C. § 12102(1)(A).

Under Article III, section 2, of the United States Constitution, federal jurisdiction is limited to actual cases and controversies. *See Steger*, 228 F.3d at 892. The question of the

plaintiff's standing to sue under Article III "'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury will likely be redressed by a favorable decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Defendants argue that Plaintiff has failed to satisfy the "injury-in-fact" requirement for two reasons: (1) her disability is unrelated to the ADA violations for which she seeks relief, and (2) she has failed to show a threat of future harm to her if the alleged ADA violations are not corrected.

### 1. Plaintiff's Disability is Related to the Alleged ADA Violations

To satisfy the "injury in fact" element of standing, "'the party seeking review [must] be himself among the injured.'" *Id.* at 893 (quoting *Lujan*, 504 U.S. at 560). In the context of the ADA, the Eighth Circuit has found that this element is satisfied only when a plaintiff seeks relief for ADA violations that are related to his or her particular disability. In *Steger*, a blind plaintiff sought relief for several ADA violations, some of which involved barriers unrelated to visual impairments. The Eighth Circuit held that the blind plaintiff was not "among the injured" with regard to violations that did not affect blind persons and thus did not have standing to sue as to those violations. *Id.* It found that "granting [the plaintiff] standing to seek relief on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III." *Id. See also Betancourt v. 2 Combs Enters., Inc.*, No. 10-3364-CV-S-MJW, 2011 WL 846849, at *3 (W.D. Mo. March 8, 2011) (relying on *Steger* and holding that a wheelchair user did not have standing to seek relief for violations "that affect persons with disabilities which are beyond or

different from plaintiff's disability," but only for violations that "could injure persons who suffer a disability like that of plaintiff"); *Gaylor v. GS Brentwood*, No. 4:11-CV-506 CAS, 2011 WL 5079588, at * 3 (E.D. Mo. Oct. 25, 2011) (relying on *Steger* and holding that a plaintiff who used a cane or wheelchair could seek relief only for ADA violations "affecting [his] specific disability").

The parties do not dispute that Plaintiff has a disability resulting from the continuing effects of a broken neck she suffered in a car accident in 1987. However, they disagree about whether her disability is related to the violations she asserts in her ADA claim—violations related to the slope of a curb ramp and of the adjoining parking area. Defendants contend that because Plaintiff's disability is based on back and neck pain, not mobility issues, "[s]he is no more discriminated against by virtue of these alleged [violations] than a person disabled by reason of mental illness would be." (Doc. 31, at 5). On the other hand, Plaintiff contends that complications from her broken neck *do* cause mobility limitations—in particular, she asserts that she suffers extreme pain from walking up even one step, and so she needs to use curb ramps.

This case presents a more difficult question than was addressed in *Steger*, the case relied on by Defendants, in which the plaintiff's disability was obviously unrelated to the ADA violations of which he complained. *See Steger*, 228 F.3d at 893 (blind plaintiff did not have standing to seek relief for violations unrelated to visual impairments); *see also Strong v. Walgreen Co.*, No. 09cv611 WQH (BLM), 2011 WL 5374125, at *7-*8 (S.D. Cal. Nov. 8, 2011) (quadriplegic plaintiff did not have standing to seek relief for ADA violations related to visual impairments). Here, Plaintiff's disability based on neck and back problems could at least plausibly relate to limitations on her ability to ambulate effectively or to climb up and down

steps, such that she would require curb ramps to be able to enter and exit the Dairy Queen. Thus, the Court must closely evaluate the evidence concerning Plaintiff's specific disability.

To support their argument, Defendants rely on Plaintiff's deposition testimony that her disability benefits claim following her 1987 car accident was approved because of nerve damage, trouble with her fingers, and trouble with her back and neck; that her disability following her car accident did not affect her ability "to be mobile, to walk around and do things around the house"; that her handicapped parking tag in 2000 was approved due to her back pain; that as of the date of her deposition, she no longer had a handicapped parking tag because her doctor said she could walk 500 feet; that she can walk up to 45 minutes before she starts to feel pain in her back; and that before her 2010 fall she could do activities such as sweeping, vacuuming, dusting, dishes, light yard work, crafts, and playing pool. Defendants also cite testimony from Plaintiff's boyfriend that before the 2010 fall, Plaintiff "got around, did everything that everybody else did" and did not have any trouble with steps.

Plaintiff argues that her disability does relate to the ADA violations at issue here, because complications from her broken neck cause her to have to have significant pain from walking and to have severe pain if she walks up even one step. In support of her position, Plaintiff relies primarily on an affidavit she submitted in which she states that she broke her neck in a car accident in 1987; that after the accident she was unable to walk without extreme pain and could not walk up or down stairs; and that in 1989, the Social Security Administration approved her application for disability benefits and found that she was unable to ambulate effectively, that walking was painful, that she could not continuously walk for more than one city block, that she could not climb stairs or ladders without extreme pain, and that she had various other postural and manipulation limitations. Plaintiff also attests that she eventually learned less painful ways

6

of performing daily activities, including doing them very slowly; that she was diagnosed in the mid-1990s with arthritis affecting her neck, hips, and knees and was told by her doctor that with that type of arthritis, she could end up in a wheelchair; that she received a Habitat for Humanity home in 2000 that was constructed as wheelchair accessible; and that she has improved in some areas since 1987 but continues to suffer from movement and mobility issues, including an inability to climb stairs without extreme pain. Plaintiff's affidavit further states that the Social Security Administration reviews her case every three years and has continued to find her disabled. Plaintiff also submitted a 2014 note from her doctor stating, "Pt's joint symptoms would be better if she can avoid walking up and down steps." Plaintiff acknowledges that her boyfriend testified that he had not observed her having trouble with steps before her 2010 fall. However, she notes that he also testified that they did not live together and saw each other only once a week before her 2010 fall.

Although it is a close call, I find that Plaintiff has demonstrated by a preponderance of the evidence that her disability is related to the ADA violations at issue and that she is "among the injured" with respect to those violations. As a preliminary matter, I give little or no weight to those parts of Plaintiff's affidavit that are directly contradicted by her deposition testimony. *See, e.g., Camfield Tires, Inc. v. Michelin Tires, Inc.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983) ("A party should not be allowed to create issues of credibility by contradicting his own earlier testimony."). However, Plaintiff's affidavit also provides evidence regarding matters not specifically addressed in her deposition. The evidence shows that in 1989, the Social Security Administration recognized that Plaintiff had significant difficulties in walking and using stairs, and those difficulties (along with others) were considered as part of the analysis of her disability. The evidence also suggests that in the years since then, Plaintiff's disability has continued to

affect her mobility and ability to use stairs. Plaintiff declares in her affidavit that she cannot climb stairs without extreme pain. She also declares that her boyfriend always had to assist her in getting in and out of his truck because of her neck and back pain. These statements are not inconsistent with anything in her deposition testimony. Moreover, they are consistent with her statement that she was diagnosed in the mid-1990s with arthritis affecting her knees, hip, back and neck; with a doctor's note she submitted indicating that she should avoid going up and down stairs; and with her statement that her home was constructed for her in 2000 to be free of stairs and wheelchair accessible. The Court finds that this evidence outweighs the deposition testimony of Plaintiff's boyfriend, with whom she did not live and whom she saw only once a week, that she did not have trouble with steps.

In sum, the Court finds that Plaintiff has shown by a preponderance of the evidence that her disability does limit her mobility, especially her ability to go up and down steps. A person with such mobility impairments would be affected by improperly sloped curb ramps and parking areas. Thus, Plaintiff's disability is sufficiently related to the alleged ADA violations to support a finding that she has suffered an "injury-in-fact."

### 2. *Plaintiff Has Demonstrated a Threat of Future Harm*

In the case of a complaint for injunctive relief, the "injury-in-fact" element of standing requires a showing that the plaintiff faces "a threat of ongoing or future harm." *Park v. Forest Servs. of the U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000). Past wrongs are evidence that bears on whether there is a threat of ongoing harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). However, for standing to exist, there must be a "real and immediate threat that [the plaintiff] would again suffer similar injury in the future." *Park*, 205 F.3d at 1037 (quotation marks omitted). "Although plaintiffs need not engage in the futile gesture of visiting a building

containing known barriers that the owner has no intention of remedying, they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers." *Steger*, 228 F.3d at 892 (citations and quotation marks omitted). To make the assessment of a likelihood of future injury in a case involving ADA violations, some courts consider factors such as "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) plaintiff's frequency of travel near defendant." *Steelman v. Rib Crib #18*, No. 11-3433-CV-S-RED, 2012 WL 4026686, at *2 (Sept. 12, 2012) (quotation marks omitted).

Defendants argue that Plaintiff cannot show a likelihood of repeated injury because she testified that the reasons she did not go to this Dairy Queen were that she had "bad memories" of her accident and that she was lactose intolerant. However, Plaintiff states in her affidavit that she loves Dairy Queen cheeseburgers; that her boyfriend loves Dairy Queen; that she has returned to the Dairy Queen at issue with her friends on two occasions but has gone to the drive through window; that she has not gone inside the store since the accident because the owners have not repaired the curb ramp area; that after the necessary repairs are completed, she will visit the Dairy Queen; that the Dairy Queen at issue is about 15 minutes away from her house; that the Dairy Queen at issue is the closest one to the billiards hall where she shoots pool; and that both she and her boyfriend look forward to visiting the Dairy Queen after shooting pool on Sundays or on other occasions.

The Court finds this evidence more than sufficient to show a real and immediate threat that Plaintiff would suffer harm in the future if the ADA violations at issue were not remedied. Applying the factors above, the Dairy Queen is quite close to plaintiff's residence; the plaintiff

9

has patronized the Dairy Queen in the past and has even gone to its drive-through window since encountering the alleged ADA violations; Plaintiff identifies specific occasions on which she is likely to return in the future (on Sundays, after shooting pool with her boyfriend); and Plaintiff has indicated that she regularly goes to a billiards hall located near the Dairy Queen.

For all of the above reasons, the Court finds that Plaintiff has shown that her disability is related to the ADA violations at issue and that there is a real and immediate threat that she will suffer future harm if they are not remedied. Thus, the injury-in-fact requirement is satisfied, and she has standing to seek relief for the ADA violations at issue. Accordingly,

**IT IS HEREBY ORDERED** that Defendants James D. Temperato and Adrian J. Temperato's motion to dismiss for lack of subject matter jurisdiction (Doc. 30), and Defendant JDT Enterprise, Inc.'s motion to dismiss for lack of subject matter jurisdiction (Doc. 45), are **DENIED**.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of November, 2014.